**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-CR-20104-MARTINEZ/BECERRA(s)(s)**

**UNITED STATES OF AMERICA**

**vs.**

**MARIO ANTONIO PALACIOS PALACIOS,**

        **Defendant.**

_____/

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
### TO DISMISS COUNT 2 OF THE SECOND SUPERSEDING INDICTMENT

The United States of America, by and through undersigned counsel, hereby opposes Defendant Mario A. Palacios Palacios' "Motion to Dismiss Count 2 of the Second Superseding Indictment," filed on November 21, 2022, at docket 83. Therein, the Defendant moves to dismiss Count 2 of the Second Superseding Indictment (the "indictment") pursuant to Fed. R. Crim. P. 12(b)(3)(B), claiming it is defective because it fails to allege that the Defendant was present in the United States at any time during the alleged crime.[1] Thus, the Defendant claims that the Court lacks jurisdiction over Count 2 of the indictment.[2] The Defendant further moves for disclosure of the Grand Jury transcript in this case pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii), arguing that the Grand Jury was improperly charged and thus he has demonstrated a particularized need for disclosure of grand jury proceedings.

---

[1] The Defendant does not argue that Count 1, charging the Defendant with Providing Material Support or Resources to Carry Out a Violation Resulting in Death, in violation of 18 U.S.C. § 2339A(a), is defective.

[2] Motions to dismiss for lack of jurisdiction are governed by Fed. R. Crim. P. 12(b)(2) and may be made at any time while the case is pending.

The Defendant's claim that the indictment is defective is incorrect because the statute at issue does not require the Defendant's physical presence within the United States during the offense; rather, it requires that the Defendant conspire "within the jurisdiction of the United States."  The United States has jurisdiction over a conspiracy if one of the conspirators was within the United States during the conspiracy.   Because the indictment alleges that one of the Defendant's coconspirators was within the United States while that conspirator was part of a criminal conspiracy that included the Defendant, the Defendant's motion to dismiss Count 2, as well as his request for disclosure of the Grand Jury transcript, should be denied.

<u>BACKGROUND</u>

The indictment, filed at docket 70, charges the Defendant, along with Rodolphe Jaar and Joseph Joel John, with two violations:  Count 1, Providing Material Support or Resources to Carry Out a Violations Resulting in Death, in violation of 18 U.S.C. § 2330A(a); and Count 2, Conspiracy to Kill or Kidnap Outside the United States, in violation of 18 U.S.C. § 956(a)(1). Count 2 alleges that:

> Beginning in or around June of 2021, and continuing through on or about July 7, 2021, in Miami-Dade County, in the Southern District of Florida, and in a place outside the United States, including Haiti and elsewhere, the defendants,
>
> **MARIO ANTONIO PALACIOS PALACIOS,**
> **RODOLPHE JAAR,**
> **and**
> **JOSEPH JOEL JOHN,**
>
> and other persons known and unknown to the Grand Jury, <u>at least one of whom having been within the jurisdiction of the United States</u>, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other, to commit at a place outside the United States, acts that would constitute murder and kidnapping if these crimes were committed in the special maritime and territorial jurisdiction of the United

States, that is, the murder and kidnapping of the President of Haiti Jovenel Moise, <u>and one or more conspirators did commit one or more acts within the jurisdiction of the United States</u>, to effect the purpose and object of the conspiracy.

Docket 70 (emphasis added).  The statute at issue reads:

Whoever, <u>within the jurisdiction of the United States</u>, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, <u>if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy</u>, be punished as provided in subsection (a)(2).

18 U.S.C. § 956(a)(1) (emphasis added).

At trial, the United States will introduce evidence that the conspiracy to kidnap or kill the President of Haiti involved conduct within the United States, and an agreement with a conspirator within the United States.  As set forth in the complaint, prior to the assassination, a co-conspirator flew to the Southern District of Florida to deliver a document that purported to provide Haitian immunity for assistance in arresting and imprisoning the President of Haiti.  Case 1:21-mj-04265-LFL, Docket 3.  Nevertheless, the Defendant still claims that the United States has no jurisdiction over him because he himself was not physically present in the United States during the period of the conspiracy.

## ARGUMENT

I.   THE INDICTMENT ALLEGES ALL OF THE ELEMENTS OF A CONSPIRACY
     WITHIN THE JURISDICTION OF THE UNITED STATES.

Contrary to the Defendant's claim, Count 2 alleges all elements of the crime charged, including that the Defendant engaged in a conspiracy "within the jurisdiction of the United States." Under Fed. R. Crim. P. 7(c)(1), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"   The Eleventh Circuit Court of Appeals has articulated a three-part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*United States v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted).   An indictment is generally sufficient "if it sets forth the offense in the words of the statute."  *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Adkinson*, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute).

An indictment does not need to "allege in detail the factual proof that will be relied upon to support the charges."  *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978).[3]

Additionally,

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes.  It is well-settled that a

---

[3]    Although not binding precedent, decisions rendered after October 1, 1981, by the Fifth Circuit are persuasive in the Eleventh Circuit.  *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

> court may not dismiss an indictment . . . on a determination of facts that
> should have been developed at trial.

*United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (internal citation and quotation omitted).  Notably, "[t]here is no summary judgment procedure in criminal cases."  *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).  "Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."  *Id*.  Thus, so long as the indictment tracks the language of the statute, challenges to the sufficiency of evidence should be deferred until trial. *United States v. Torkington*, 812 F.2d 1347 (11th Cir. 1987) (holding that, on a motion to dismiss the indictment, the district court must not pierce the pleadings or make a premature resolution of the merits of the allegations).

Here, the Defendant's argument is effectively a premature sufficiency-of-the-evidence claim, as he tacitly acknowledges in his motion.  *See* Defendant's Motion, Docket 83, p. 7 (arguing that "[Defendant] should not have to endure a lengthy trial to await a judicial determination of what the government must prove to convict him of a Section 956 conspiracy offense").  His argument is based upon a misinterpretation of Section 956, which he argues—incorrectly—requires the government to prove that he engaged in conduct while he was "physically present" in the United States.  But those words do not appear in Section 956.  Rather, the statute requires only that he conspire "within the jurisdiction of the United States," which the indictment alleges in satisfaction of Rule 7(c)(1).  Similarly, the commission of an overt act is properly alleged in the indictment.  *E.g.*, *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985) ("an indictment for conspiracy to commit a criminal offense is not required to be as specific as a substantive count").

II.     THE JURISDICTIONAL REQUIREMENT OF § 956 IS SATISFIED WHEN THE
        DEFENDANT CONSPIRES WITH A PERSON IN THE UNITED STATES.

The text of Section 956 explicitly requires that a defendant conspire "within the jurisdiction of the United States"—not that he conspire within the United States.  The United States' criminal jurisdiction sweeps more broadly than its territorial jurisdiction and includes criminal activity conducted abroad that has a nexus to the United States.  Where one coconspirator is present within the United States, a criminal conspiracy is within the jurisdiction of the United States.

A.     The Jurisdiction of the United States Covers International Criminal Conspiracies
       that Include a Coconspirator Acting Within the United States.

The Defendant's argument is inconsistent with both general conspiracy principles and caselaw interpreting Section 956(a).  The United States' jurisdiction over criminal conspiracies is extensive.  Thus, "if a criminal enterprise is carried out in part within the United States, all the participants, including foreigners whose activities were entirely outside the United States, may be penalized."  *Ford v. United States*, 273 U.S. 593, 622-23 (1927); *accord United States v. Winter*, 509 F.2d 975, 980-83 (5th Cir. 1975); *cf. United States v. Lewis*, 676 F.2d 508, 511 (11th Cir. 1982) ("[W]here a criminal conspirator commits an act in one district which is intended to further a conspiracy by virtue of its effect in another district, the act has been committed in both districts and venue is properly laid in either.").  Here, that includes the Defendant.

Because a conspiracy that includes a coconspirator within the United States falls within "the jurisdiction of the United States," the Fifth Circuit has explained that  the elements of a Section 956 violation are: "(1) the defendant agreed with at least one person to commit murder; (2) the defendant willfully joined the agreement with the intent to further its purpose; (3) during the existence of the conspiracy, one of the conspirators committed at least one overt act in furtherance

of the object of the conspiracy; and (4) *at least one of the conspirators was within the jurisdiction of the United States when the agreement was made*." *United States v. Wharton*, 320 F.3d 526, 537-38 (5th Cir. 2003) (emphasis added). This formulation has been cited with approval in other courts. *See, e.g.*, *United States v. Fernandez*, 559 F.3d 303, 325 (5th Cir. 2009) (citing *Wharton*); *United States v. Martinez-Herrera*, 539 Fed. Appx. 598, 600 (5th Cir. 2013) (same); *United States v. Obregon-Reyes*, 507 Fed. Appx. 413, 421 (5th Cir. 2013); *United States v. Hassan*, 742 F.3d 104, 141 (4th Cir. 2014) (same); *United States v. Amawi*, 695 F.3d 457, 494 (6th Cir. 2012) (Moore, J., concurring) (quoting *Wharton*); *United States v. Leija-Sanchez*, 820 F.3d 899, 901 (7th Cir. 2016) (finding no plain error where court instructed jury that "jurisdiction" in § 956 meant that "the United States had the authority to penalize this murder" in case involving murder in Mexico where defendants conspired with U.S.-based person but did not enter the U.S.); *United States v. Al-Arian*, 308 F. Supp. 1322, 1350 (M.D. Fla. 2004) (citing *Wharton* and opining that defendant's pretrial motion to dismiss the indictment was "inappropriate"); *United States v. Sattar*, 314 F. Supp. 2d 279, 304 (S.D.N.Y. 2004) (citing *Wharton*), *aff'd sub nom. United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009); *United States v. Ahmed*, 2008 WL 5095976, at *1 (N.D. Ohio Nov. 21, 2008) (same).

The Defendant seeks to distinguish *Wharton* by claiming "[t]he fundamental jurisdictional issue here was a *non-issue* in *Wharton*" and speculating that "[i]t is unlikely that the parties even considered about [sic] that part of the definition of the offense or the corresponding jury instruction." Defendant's Motion, docket 83, p. 7 (emphasis in original). In fact, the defendant in *Wharton* did challenge the United States' jurisdiction over the crime. *See United States v. Wharton*, 2002 WL 32114152 (C.A.5), at *37 ("In evaluating the trial evidence, there is an absence

7

of any proof that the defendant conspired with codefendant Nipper to kill Sheila, <u>or that an overt act in furtherance of the murder conspiracy occurred in the United States, as required by the indictment</u>.") (emphasis added).  But in any event, as explained above, numerous other cases have listed the identical elements for conviction under Section 956.

Cases in which there was litigation over the sufficiency of the evidence pertaining to Section 956(a)'s jurisdictional requirement have either rejected or been skeptical of the Defendant's argument, while underscoring the need for jurisdictional sufficiency determinations to be made after the evidence is presented at trial.  For example, in *Fernandez*, the Fifth Circuit addressed a challenge to a defendant's Section 956 conviction because "there was no showing that any of the conspirators were within the jurisdiction of the United States when the agreement was made[.]"  *Fernandez*, 559 F.3d at 325.  There, the court found that the jury could have inferred that the defendant "tacitly or otherwise, hatched the conspiracy to kill [the victim] when both men were present in the [United States].  *Id.* at 325-27.  Similarly, in *United States v. Meltzer*, 2021 WL 4847383 (S.D.N.Y. Oct. 15, 2021), the court emphasized that an analysis of jurisdiction is "better reserved for decision in the context of the jury charge, after the Government's evidence has been presented, or post-trial briefing."  In *Meltzer*, the district court addressed the identical issue argued by the Defendant, ultimately construing the argument as a premature motion to dismiss the indictment, which properly "track[ed] the statutory language and offer[ed] specific overt acts that [were] consistent with the Government's allegation that the Defendant conspired within the jurisdiction of the United States, regardless of how that phrase is interpreted."  *Id.* at *5.  Accordingly, the Defendant's motion was denied.  This Court should do likewise.

B.      Legislative History and Logic Confirm that an International Criminal Conspiracy in which One Coconspirator Is in the United States Falls "Within the Jurisdiction of the United States" Under Section 956.

The Congress that enacted Section 956(a) unmistakably envisioned that it would cover those who conspired outside the United States with a coconspirator within the United States (so long as an overt act occurred inside the United States).  In introducing the bill, then-Senator Daschle explained:

> [T]he new subsection 956(a) is intended to ensure that the government is able to punish those persons who use the United States as a base in which to plot such a crime to be carried out outside the jurisdiction of the United States.
>
> New subsection 956(a) would apply to conspiracies to commit one of the enumerated offenses where at least one of the conspirators is inside the United States.  The other member or members of the conspiracy would not have to be in the United States but at least one overt act in furtherance of the conspiracy would have to be committed in the United States.  The subsection would apply, for example, to two individuals who consummated an agreement to kill a person in a foreign country where only one of the conspirators was in the United States and the agreement was reached by telephone conversations or letters, provided at least one of the overt acts was undertaken by one co-conspirator while in the United States. In such a case, the agreement would be reached at least in part in the United States. The overt act may be that of only one of the conspirators and need not itself be a crime.

141 Cong. Rec. S6202-04, 1995 WL 261206 (emphasis added).  Thus, the legislative history makes clear that Section 956(a) is meant to punish all conspirators, so long as one of the conspirators was in the United States and a conspirator undertakes an overt act within the United States.

Indeed, the illustration provided by the legislative history is similar to the case here:  there was an agreement to kidnap and kill the President of Haiti; at least one of those conspirators was in the United States, and the Defendant was one of several in Haiti.  The United States expects to prove the existence of the conspiracy by introducing telephone conversations and text messages, which include at least one conspirator within the United States.  During the conspiracy, an overt

act took place within the United States, as alleged in the indictment and previously filed criminal complaint. *See* Case 1:21-mj-04265-LFL, docket 3, p. 5 (setting forth that one of the conspirators flew to the Southern District of Florida to deliver a "Haitian immunity document" and returned to Haiti to participate in the assassination.)

In addition, the Defendant's forced and formulaic reading of Section 956 would achieve bizarre results that Congress could not have intended. Under his interpretation of the statute, a United States person could travel to another country, decide to plan and carry out a kidnapping or murder in that country with help from someone within the United States, and then return and avoid any criminal liability within the United States. Section 956 closes this potential loophole by attaching liability to conspiracies that occur "within the jurisdiction of the United States" where one conspirator undertakes an overt act "within the jurisdiction of the United States." Both these elements are properly alleged in the indictment.

III.     BECAUSE GROUNDS TO DISMISS THE INDICTMENT DO NOT EXIST, THE DEFENDANT'S REQUEST FOR DISCLOSURE OF THE GRAND JURY TRANSCRIPT SHOULD BE DENIED.

Finally, the Defendant claims he is entitled to disclosure of the grand jury transcript in this case because, he argues, "it appears that the government may have relied on a misunderstanding of the law and an outlier definition of the elements of the offense when it presented the matter to the Grand Jury." Defendant's Motion, docket 83, p. 7. However, it is the Defendant who has misunderstood the law. As a general rule, secrecy of the grand jury proceedings is required by law and sound policy. *See United States v. Aisenberg*, 358 F.3d 1327, 1346-47 (11th Cir. 2004) (discussing the justification for and interests served by grand jury secrecy). Rule 6(e) of the Federal Rules of Criminal Procedure codifies the expectation of secrecy for grand jury

proceedings, except in limited circumstances. *See* Fed. R. Crim. P. 6(e). In pertinent part, a district court has express authority, pursuant to Rule 6(e), to authorize the disclosure of grand jury matters "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

The burden of demonstrating that the need for disclosure outweighs the need for, and public interest in, secrecy rests upon the party seeking disclosure. *United States v. Liuzzo*, 739 F.2d 541, 545 (11th Cir. 1984). To carry this burden, the party seeking disclosure of grand jury material must show a compelling and particularized need for disclosure. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (stating that the "indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity" and that instances where the need outweighs the countervailing policy must "be shown with particularity") (internal citation omitted). Particularized need is not shown by a general allegation that grand jury materials are necessary for the preparation of a motion to dismiss. *See United States v. Burke*, 856 F.2d 1492, 1496 (11th Cir. 1988) (citing *Thomas v. United States*, 597 F.2d 656, 658 (8th Cir. 1979)).

Here, the Defendant initially and incorrectly argues that the indictment fails to allege an essential element of the offense. Perhaps in recognition of the weakness of this argument, he then prematurely moves to dismiss the case against him claiming that the evidence at trial will not establish the Court's jurisdiction over him under Section 956. To bootstrap that contention, he also seeks disclosure of the grand jury transcript, hoping it will provide a factual predicate for his inaccurate view of the law. But protecting the rights of defendants through review of the sufficiency of the face of the indictment is consistent with the legal maxim that "'[a]n indictment returned by a legally constituted and unbiased grand jury, . . . *if valid on its face*, is enough to call

11

for trial of the charge on the merits.'"  *United States v. Maceo*, 873 F.2d 1, 3 (1st Cir. 1989)

(quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)) (emphasis added); *see also United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986); *United States v. Trie*, 23 F. Supp. 2d 55, 62 (D.D.C. 1998) (finding where "the indictment is facially valid" that "the mere suspicion that the grand jury may not have been properly instructed . . . is insufficient to establish that [the defendant] is entitled either to dismissal of the indictment or to disclosure of grand jury materials"). Here too the facially valid indictment undermines any "particularized need" for disclosure of the grand jury transcripts; the Defendant's misinterpretation of Section 956's elements simply does not qualify.

<u>CONCLUSION</u>

The indictment in this case properly alleges the required elements, including that the Defendant conspired "within the jurisdiction of the United States."  As a result, the Defendant's motion to dismiss, and collateral request for disclosure of the grand jury proceedings, should be denied.  The Defendant's interpretation of "within the jurisdiction of the United States" to mean his physical presence here lacks textual, historical, and legal support.  At bottom, the Defendant

//

//

//

questions whether the Government can establish that he violated the statute, which is a sufficiency claim to be resolved by the jury after the Court determines and provides the appropriate legal instructions.

Respectfully submitted,

MATT G. OLSEN
ASSISTANT ATTORNEY GENERAL

By:   /s/ Frank V. Russo
      /s/ Emma Ellenrieder
      Trial Attorneys
      Court ID No. A5502917
      Court ID No. A5502918
      National Security Division
      Department of Justice
      950 Pennsylvania Avenue
      Washington, DC 20530
      Telephone: (202) 307-2898
      Email: Frank.Russo2@usdoj.gov
            Emma.Ellenrieder@usdoj.gov

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   /s/ Andrea Goldbarg
      /s/ Monica K. Castro
      Assistant United States Attorneys
      Court ID No. A5502556
      Court ID No. A5502776
      U.S. Attorney's Office - SDFL
      99 N.E. 4th Street, Suite 718
      Miami, FL 33132-2111
      Telephone: (305) 961-9000
      Email: Andrea.Goldbarg@usdoj.gov
            Monica.Castro@usdoj.gov

13

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I filed the foregoing document with the Clerk of the Court

using CM/ECF and served a copy to defense counsel by ECF on or about December 19, 2022.


*/s/ Emma Ellenrieder*_____
Trial Attorney

14